# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JAMES WATKINS, Individually and On Behalf of All Others Similarly Situated, <br><br>         Plaintiff, <br><br>    v. <br><br> SOLID BIOSCIENCES, INC., ILAN GANOT, JENNIFER ZIOLKOWSKI, J.P. MORGAN SECURITIES LLC, GOLDMAN SACHS & CO. LLC, LEERINK PARTNERS, LLC, NOMURA SECURITIES CO., LLC, and CHARDAN CAPITAL MARKETS LLC, <br><br>         Defendants. | Case No. 18-10587 <br><br><br> **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff James Watkins ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Solid Biosciences, Inc. ("Solid Biosciences" or the "Company"), with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Solid Biosciences; and (c) review of other publicly available information concerning Solid Biosciences.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a class action on behalf of persons and entities that: a) acquired common stock ("stock" or "shares") of Solid Biosciences pursuant and/or traceable to the Company's false and/or misleading registration statement and prospectus (collectively, the "Registration Statement") issued in connection with the Company's January 25, 2018 initial public offering ("IPO" or the "Offering"); and/or, b) acquired Solid Biosciences' securities between January 25, 2018, and March 14, 2018, inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants, under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2. Solid Biosciences purportedly seeks to cure Duchenne muscular dystrophy, or DMD. The Company's lead product candidate, SGT-001, is a gene transfer under development to restore functional dystrophin protein expression in patients' muscles. The Company's therapy uses adeno-associated virus (AAV) to deliver the transgene into the patient.

3. On January 2, 2018, the Company filed its IPO prospectus with the SEC, which forms part of the IPO Registration Statement that was declared effective on January 25, 2018. In the IPO, the Company sold 7,000,000 shares of common stock at a price of $16.00 per share. The

Company received proceeds of approximately $112 million from the IPO, net of underwriting discounts and commissions.  The proceeds from the IPO were purportedly to be used to fund research and develop a cure for DMD.

4.     On January 30, 2018, an article was published by various medical experts highlighting the risks of studies using high doses of gene therapies using adeno-associated virus (AAV). One of the article's co-authors was Dr. James Wilson, a former member of the Solid Biosciences' advisory board.

5.     On this news the Company's shares fell $1.20 per share, or over 5%, to close on January 30, 2018 at $22.50 per share.

6.     On March 14, 2018, after the close of trading, the Company published a press release announcing that the U.S. Food and Drug Administration ("FDA") had placed a clinical hold on the SGT-001 Phase I/II clinical trial, IGNITE DMD. The press release further revealed in relevant part:

> The first patient dosed in the clinical trial was a non-ambulatory adolescent who received 5E13 vg/kg of SGT-001 on February 14, 2018. Several days after administration the patient was hospitalized due to laboratory findings that included a decrease in platelet count followed by a reduction in red blood cell count and evidence of complement activation. The patient showed no signs or symptoms of coagulopathy (bleeding disorder) and no relevant changes from baseline in liver function tests. The patient responded well to medical treatment and is currently asymptomatic. All laboratory parameters have either improved or returned to normal, and he is continuing outpatient assessments.
>
> Solid reported the event to the FDA and, because it was unexpected, classified it as a Suspected Unexpected Serious Adverse Reaction (SUSAR). The FDA informed the company that the clinical hold was due to the event.

7.     On March 15, 2018, Solid Biosciences' share price fell $16.99 per share, or over 60%, to close at $9.32 per share on March 15, 2018.

8.     Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business,

operations, and prospects. Specifically, Defendants failed to disclose: ((1) that Solid Biosciences'

lead drug candidate SGT-001 had a high likelihood of causing adverse events in patients; (2) that

Solid Biosciences misled investors regarding the toxicity of SGT-001; and (3) that, as a result of

the foregoing, Defendants' statements in the Registration Statement regarding Solid Biosciences'

business, operations, and prospects, were materially false and/or misleading.

9.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline

in the market value of the Company's securities, Plaintiff and other Class members have suffered

significant losses and damages.

## JURISDICTION AND VENUE

10.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the

Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15

U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §

240.10b-5).

11.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange

Act (15 U.S.C. §78aa).

12.     Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section

27 of the Exchange Act (15 U.S.C. § 78aa(c)).  A significant portion of Defendants' actions, and

the subsequent damages, took place in this Judicial District.  Additionally, Solid Biosciences'

principal executive offices are located within this Judicial District.

13.     In connection with the acts, transactions, and conduct alleged herein, Defendants

directly and indirectly used the means and instrumentalities of interstate commerce, including the

United States mail, interstate telephone communications, and the facilities of a national securities exchange.

**PARTIES**

14.     Plaintiff James Watkins, as set forth in the accompanying certification, incorporated by reference herein, purchased Solid Biosciences stock during the Class Period, pursuant and/or traceable to the Registration Statement issued in connection with the Company's IPO, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

15.     Defendant Solid Biosciences Therapeutics, Inc. is incorporated in Delaware and its principal executive offices are located in Cambridge, Massachusetts.  Solid Biosciences' common stock trades on the NASDAQ Stock Market ("NASDAQ") under the symbol "SLDB."

16.     Defendant Ilan Ganot ("Ganot") was, at all relevant times, the Chief Executive Officer ("CEO") and a Director of Solid Biosciences, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

17.     Defendant Jennifer Ziolkowski ("Ziolkowski") was, at all relevant times, the Chief Financial Officer ("CFO") of Solid Biosciences, and signed or authorized the signing of the Company's Registration Statement filed with the SEC.

18.     Defendants Ganot and Ziolkowski are collectively referred to hereinafter as the "Individual Defendants."  The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Solid Biosciences' reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be

corrected.  Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

19.     Defendant Goldman Sachs & Co. LLC ("Goldman Sachs") served as an underwriter for the Company's IPO.

20.     Defendant J.P. Morgan Securities LLC ("J.P. Morgan") served as an underwriter for the Company's IPO.

21.     Defendant Leerink Partners LLC ("Leerink") served as an underwriter for the Company's IPO.

22.     Defendant Chardan Capital Markets LLC ("Chardan") served as an underwriter for the Company's IPO.

23.     Defendants Goldman Sachs, J.P. Morgan, Leerink, and Chardan are collectively referred to hereinafter as the "Underwriter Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

24.     Solid Biosciences purportedly seeks to cure Duchenne muscular dystrophy, or DMD. The Company's lead product candidate, SGT-001, is a gene transfer under development to restore functional dystrophin protein expression in patients' muscles.

25.     On January 25, 2018, the SEC declared effective the Form S-1 that Solid Biosciences filed on December 29, 2017, and amended on January 25, 2018.  The Form S-1 and all amendments thereto form part of the "Registration Statement" for the IPO.

26.     On January 2, 2018, the Company filed with the SEC its IPO prospectus (the "Prospectus"), which also forms part of the Registration Statement.  Under applicable SEC rules and regulations, the Registration Statement was required to disclose known trends, events or uncertainties that were having, and were reasonably likely to have, an impact on the Company's continuing operations.

27.     On January 25, 2018, Solid Biosciences priced its IPO of 7 million shares of common stock at a price of $16 per share, exclusive of the underwriters' option to purchase 1,050,000 additional shares.  According to the Company, the Offering raised approximately $116 million for the Company, net of underwriting discounts, commissions, and estimated offering expenses.

### Materially False and Misleading
### Statements Issued During the Class Period

28.     The Class Period begins on January 25, 2018.  Prior to the start of the Class Period, on January 25, 2018, the Company filed an amendment to its Form S-1.  In the amendment, the

Company informed investors that the SGT-001 study was enrolling patients and there was no indication of dangerous toxicity levels, stating in relevant part:

> As part of our preclinical program, we performed necessary GLP toxicology studies to establish the overall safety profile of SGT-001 in wild-type mice and NHPs. The data and our conclusions from these studies were included in our IND submission to the FDA. Systemic administration of SGT-001 was generally well tolerated in both species. We observed no evidence of test-article-related toxicity for up to 13 weeks after systemic administration of SGT-001 in either species that would prevent us from initiating clinical studies. In the NHP study, test-article-related effects were self-limited, mild chemistry and hematology changes with no microscopic correlates at the end of the study. There was a transient and asymptomatic increase in liver function enzymes observed in NHPs starting on day 9, which returned to normal levels by day 21. We believe there were no other relevant test-article-related adverse events associated with SGT-001 administration in either GLP study.
>
> ***
>
> In the fourth quarter of 2017, we announced the initiation of a randomized, controlled, open-label, single-ascending dose Phase I/II clinical study, called IGNITE DMD, designed to evaluate SGT-001 in ambulatory and non-ambulatory males with DMD aged four to 17 years. The primary objectives of the study are to assess the safety and tolerability of SGT-001, as well as efficacy as defined by microdystrophin protein expression.
>
> ***
>
> We are developing SGT-001 for the treatment of DMD through a single intravenous administration. In the fourth quarter of 2017, we announced the initiation of IGNITE DMD, a randomized, controlled, open-label, single-ascending dose Phase I/II clinical study designed to evaluate SGT-001.

29.     The above statements identified in ¶28 were materially false and/or misleading when made because Defendants failed to disclose: (1) that Solid Biosciences' lead drug candidate SGT-001 had a high likelihood of causing adverse events in patients; (2) that Solid Biosciences misled investors regarding the toxicity of SGT-001; and (3) that, as a result of the foregoing,

Defendants' statements in the Registration Statement regarding Solid Biosciences' business, operations, and prospects, were materially false and/or misleading.

### Disclosures at the End of the Class Period

30.     On January 30, 2018, an article was published by various medical experts highlighting the risks of studies using high doses of gene therapies using adeno-associated virus (AAV). One of the article's co-authors was Dr. James Wilson, a former member of the Solid Biosciences' advisory board.

31.     On this news the Company's shares fell $1.20 per share, or over 5%, to close on January 30, 2018 at $22.50 per share.

32.     On March 14, 2018, after the close of trading, the Company published a press release announcing that the U.S. Food and Drug Administration ("FDA") had placed a clinical hold on the SGT-001 Phase I/II clinical trial, IGNITE DMD. The press release further revealed in relevant part:

> The first patient dosed in the clinical trial was a non-ambulatory adolescent who received 5E13 vg/kg of SGT-001 on February 14, 2018. Several days after administration the patient was hospitalized due to laboratory findings that included a decrease in platelet count followed by a reduction in red blood cell count and evidence of complement activation. The patient showed no signs or symptoms of coagulopathy (bleeding disorder) and no relevant changes from baseline in liver function tests. The patient responded well to medical treatment and is currently asymptomatic. All laboratory parameters have either improved or returned to normal, and he is continuing outpatient assessments.
>
> Solid reported the event to the FDA and, because it was unexpected, classified it as a Suspected Unexpected Serious Adverse Reaction (SUSAR). The FDA informed the company that the clinical hold was due to the event.

33.     On March 15, 2018, Solid Biosciences' share price fell $16.99 per share, or over

60%, to close at $9.32 per share on March 15, 2018.

## CLASS ACTION ALLEGATIONS

34.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that purchased or otherwise acquired Solid Biosciences securities: a) issued in connection with the Company's January 25, 2018 initial public offering ("IPO" or the "Offering"); and/or, b) between January 25, 2018, and March 14, 2018, inclusive (collectively, the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

35.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Solid Biosciences' securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Millions of Solid Biosciences shares were traded publicly during the Class Period on the NASDAQ.  As of November 1, 2017, there were over 8 million shares of the Company's common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by Solid Biosciences or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

36.    Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

37.    Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

38.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

(a)    whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)    whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Solid Biosciences ; and

(c)    whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

39.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

40.     The market for Solid Biosciences' securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Solid Biosciences' securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Solid Biosciences' securities relying upon the integrity of the market price of the Company's securities and market information relating to Solid Biosciences, and have been damaged thereby.

41.     During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Solid Biosciences' securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  Said statements and omissions were materially false and/or misleading in that they failed to disclose material adverse information and/or misrepresented the truth about Solid Biosciences' business, operations, and prospects as alleged herein.

42.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Solid Biosciences' financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other

members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein.

## LOSS CAUSATION

43.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

44.     During the Class Period, Plaintiff and the Class purchased Solid Biosciences' securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

45.     As alleged herein, Defendants acted with scienter in that Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Solid Biosciences, his/her control over, and/or receipt and/or modification of Solid Biosciences' allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Solid Biosciences, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
### (FRAUD-ON-THE-MARKET DOCTRINE)

46.     The market for Solid Biosciences' securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, Solid Biosciences' securities traded at artificially inflated prices during the Class Period.  On March 2, 2018, the Company's stock closed at a Class Period high of $33.17 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Solid Biosciences' securities and market information relating to Solid Biosciences, and have been damaged thereby.

47.     During the Class Period, the artificial inflation of Solid Biosciences' stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Solid Biosciences' business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of Solid Biosciences and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

48.     At all relevant times, the market for Solid Biosciences' securities was an efficient market for the following reasons, among others:

(a)     Solid Biosciences stock met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)     As a regulated issuer, Solid Biosciences filed periodic public reports with the SEC and/or the NASDAQ;

(c)     Solid Biosciences regularly communicated with public investors *via* established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)     Solid Biosciences was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

49.     As a result of the foregoing, the market for Solid Biosciences' securities promptly digested current information regarding Solid Biosciences from all publicly available sources and reflected such information in Solid Biosciences' stock price. Under these circumstances, all purchasers of Solid Biosciences' securities during the Class Period suffered similar injury through their purchase of Solid Biosciences' securities at artificially inflated prices and a presumption of reliance applies.

50.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements

and/or omissions. Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery. All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions. Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

51.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Solid Biosciences  who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 11 of the Securities Act**
**(Against All The Defendants)**

52.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

53.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Section 11 Defendants.

54.     The Registration Statement for the IPO was inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

55.     Solid Biosciences is the registrant for the IPO.  The Section 11 Defendants named herein were responsible for the contents and dissemination of the Registration Statement.

56.     As issuer of the shares, Solid Biosciences is strictly liable to Plaintiff and the Class for the misstatements and omissions.

57.     None of the Section 11 Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Registration Statement were true and without omissions of any material facts and were not misleading.

58.     By reasons of the conduct herein alleged, each Section 11 Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

59.     Plaintiff acquired Solid Biosciences shares pursuant and/or traceable to the Registration Statement for the IPO.

60.     Plaintiff and the Class have sustained damages.  The value of Solid Biosciences common stock has declined substantially subsequent to and due to the Section 11 Defendants' violations.

## SECOND CLAIM
### Violation of Section 15 of the Securities Act
### (Against the Individual Defendants)

61.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

62.     This count is asserted against the Section 11 Individual Defendants and is based upon Section 15 of the Securities Act.

63.     The Section 11 Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Solid Biosciences within the meaning of Section 15 of the Securities Act.  The Section 11 Individual Defendants had the power and influence and exercised the same to cause Solid Biosciences to engage in the acts described herein.

64.     The Section 11 Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

65.     By virtue of the conduct alleged herein, the Section 11 Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

## THIRD CLAIM
### Violation of Section 10(b) of The Exchange Act
### and Rule 10b-5 Promulgated Thereunder
### (Against the Company and the Individual Defendants)

66.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

67.     During the Class Period, the Company and the Individual Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein;

and (ii) cause Plaintiff and other members of the Class to purchase Solid Biosciences' securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, the Company and the Individual Defendants, and each of them, took the actions set forth herein.

68.    the Company and the Individual Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Solid Biosciences' securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  The Company and the Individual Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

69.    The Company and the Individual Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Solid Biosciences' financial well-being and prospects, as specified herein.

70.    These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Solid Biosciences' value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Solid Biosciences  and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a

course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

71.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

72.     The Company and the Individual Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Solid Biosciences' financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by the Company and the Individual Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, these defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such

knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

73.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Solid Biosciences' securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by the Company and the Individual Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by the Company and the Individual Defendants, but not disclosed in public statements by these defendants during the Class Period, Plaintiff and the other members of the Class acquired Solid Biosciences' securities during the Class Period at artificially high prices and were damaged thereby.

74.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Solid Biosciences was experiencing, which were not disclosed by the Company and the Individual Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Solid Biosciences  securities, or, if they had acquired such securities

during the Class Period, they would not have done so at the artificially inflated prices which they paid.

75.    By virtue of the foregoing, the Company and the Individual Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

76.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**FOURTH CLAIM**
**Violation of Section 20(a) of the Exchange Act**
**(Against the Individual Defendants)**

77.    Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

78.    The Individual Defendants acted as controlling persons of Solid Biosciences within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these

statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

79.     In particular, each of these Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

80.     As set forth above, Solid Biosciences and the Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Federal Rules of Civil Procedure 23;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 27, 2018                              **ANDREWS DEVALERIO LLP**

*/s/ Glen DeValerio*
Glen DeValerio (BBO #122010)
Daryl Andrews (BBO #658523)
265 Franklin Street, Suite 1702
Boston, MA 02110
Telephone: (617) 936-2796
glen@andrewsdevalerio.com
daryl@andrewsdevalerio.com

**GLANCY PRONGAY & MURRAY LLP**
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Counsel for Plaintiff*